Parker, C. J.
The plaintiff’s right to recover in this action *110 depends upon a supposed obligation, on the part of the defendants, to deliver to her a certain portion of the stock of the United States, created by virtue of an act of Congress, passed the 31st of March, 1814, providing for the indemnification of certain claimants of public lands in the Mississippi Territory. The defendants are the directors of an unincorporated association of individuals, who con Iracted with Amasa Jackson and William Williamson, the agents of the Georgia Mississippi Company; which company had purchased of the state of Georgia a part of that large tract of land which has so long been in dispute, on account of an alleged fraud in obtaining the title from the legislature of that state.
The company, of which the defendants are the directors, associated, in the year 1796, under the name of the New England Mississippi Land Company; and entered into certain articles of agreement, called the constitution, according to which the whole affairs of the company, respecting the land so purchased, were to be disposed and managed. Among other things, it was agreed that the legal title to the whole land purchased should be vested in three of their number, as trustees ; who were to issue certificates to each member, expressing the number of shares or proportion of interest to which each individual was entitled, out of the whole purchase; and, by a vote of the company, these certificates were made transferable, by a blank endorsement * of the name of the person to whom they should be thus issued. The form of the certificate is established by the twelfth article of agreement ; and it is provided, in the same article, that the same, when recorded in the manner therein prescribed, shall be complete evidence of the right of the person to whom it is issued in the said purchase.
In pursuance of these articles of agreement, conveyances were made, which constituted three persons the trustees of the land purchased as aforesaid; and, by request of William Wetmore, who was an original subscriber and purchaser, certificates were issued by them to Robert Williams, showing his right to a certain portion of the purchase, which he had required under the said Wetmore; and the plaintiff is bona fide holder of three certificates so issued, ,endorsed by the said Williams, in the manner required by said articles of agreement; and thereupon was considered and admitted to be a member of the said association, having a right to vote with, and being bound by the votes and doings of the said association, agreeably to their original compact with each other.
The company, contemplating some interference, on the part of the United States, to compromise the claims of the several parties, who held under the grant of the legislature of Georgia, by the twentieth *111 article of the agreement under which they associated, authorized any five of the directors, or any agent who should by them be appointed, to grant, sell, convey, or release, to the United States, or to any persons, agents, or commissioners, authorized for that purpose, the whole, or any part, of the land belonging to the company, for such consideration, in money, by loan, or in parts of the land in confirmation of the remainder, as should be agreed on by the respective parties. And, by the twenty-second article, adopted in the form prescribed by their original articles of agreement, the directors were authorized and empowered to agree to release or assign to the United States the whole title and claim of the com pony to all the lands, or any part thereof, which they
* claimed under the act of the legislature of the state of Georgia, on such terms as had then been offered by authority of the United States. And the directors were empowered to direct and require the trustees for the time being to make and deliver a sufficient deed, for carrying the same into full effect; and it was voted that any certificate, or other consideration therefor, should be received and holden by the treasurer of said company, to be disposed of by order of the board of directors, for the use of the claimants, according to their respective interests, after the just claims and demands upon the company should have been dis charged.
By the act of Congress which is referred to, and the terms of which are accepted in the said vote, certain commissioners were to be appointed ; to whom was given authority, among other things, to determine upon the sufficiency of the releases and assignments which were to be given according to said act; and also to adjudge and finally to determine upon all such claims so released as aforesaid as might be found to conflict with and be adverse to each other. And it was further provided, that, after the commissioners should have made report to the president of the United States that nine tenths of the land had been released, with the names «of the claimants, the president should order certificates to be issued to the several claimants ; and, among others, to the persons claiming in the name of or under the Georgia Mississippi Company, a sum not exceeding one million five hundred and fifty thousand dollars. And it was further provided, that persons claiming under either of the companies thus provided for should receive indemnity only in proportion to the amount of such claims.
It is agreed, in the present case, that the New England Mississippi Company, and each individual thereof, including the plaintiff in this action, agreed and assented to the several '.c.s of Congress passed upon this subject, and to the commissioners wag were final!* *112 appointed to execute those acts; and that proper releases were made by the trustees of the lands of the * company ; so that they became entitled to the indemnity provided for in the act.
The commissioners, having met, pursuant to the authority given them by the acts of Congress, and having heard the several parties who appeared before them, reported that a certain amount of stock was due to the Neiv England Mississippi Company, according to the principles contained in the act; and, conformably to their report, certificates have been issued to, and received by, the treasurer of the said company, and are under the control and orders of the defendants, according to the authority given them by the articles of agreement aforesaid. But the amount of stock which would be due upon the proportion of said land originally purchased by William Wetmore aforesaid, was deducted from the amount reported to be due to this company.
The plaintiff’s claim in this action rests upon the supposition that the interest of all the members of .the New England Mississippi Company, in the purchase from the Georgia Company, formed a common fund, each individual’s proportion of which was represented by the scrip or certificate which he held ; and that any deduction from or diminution of the common fund was to be ratably apportioned upon the interests or shares of each individual, without any regard to the original title from which such share emanated.
If this is the true construction and legal effect of the association, entered into by the original subscribers, it is immaterial whether the commissioners have rightly executed their authority under the acts of Congress touching this subject or not; for, in such case, the members of the association must be viewed in the light of copartners, alike liable to profit and loss, in proportion to their property in the stock, from whatever cause a change in the amount or value of theft stock may be derived.
' But upon a careful inspection of the articles of association, we cannot fairly deduce any such principle from them. The object of the association was to unite the interest and the influence of the whole, in establishing *the title to the land, or in obtaining indemnification in case that title should be destroyed; and to raise money to defray the expenses which it was foreseen would be incurred in the prosecution of either of these objects. And it was also contemplated that sales might be made, in case the title to the land should be confirmed; and that it was for the interest of all the purchasers that every thing should be managed, by agents of the association, for the common *113 good. It is nowhere provided or implied that, if the right or interest of any of the members should be taken away from the common fund, by reason of any defect in the original title under which he claims, such individual should nevertheless retain his share in the residue, the other members sharing the loss with him.
Such a compact cannot be inferred from the original association, which was founded on the supposition that each subscriber had an indefeasible title to the share which he contributed to the common stock, except as that title might be affected in the whole purchase by the alleged fraud upon the legislature in obtaining the original grant; which, throwing a cloud over the whole title, might be supposed to create a common interest, so far as that might eventually affect the purchase ; and for any diminution of the property on that account, an apportionment might have been contemplated, and was probably expected.
The proceedings of the commissioners under the act of Congress, assented to by the company, and by each member, the plaintiff in this action included, must be considered as causing a dissolution of the community of property relative to the purchase. For it is provided, in the twenty-second article of the agreement, that the directors, after settling the affairs of the company, and making the proper deductions to satisfy just claims, shall dispose of the stock or other consideration, which may be given by the United States for.the use of the claimants ór members, according to their respective interests.
The question therefore properly is, What is the interest * of the plaintiff in the common stock which is now to be divided ? If it appears that she had no interest, or tha.t what she, or those under whom she claims, may once have contributed has been withdrawn by herself, or by any other, with lawful authority claiming it in opposition to her; and that this has been done against the will, and contrary to the efforts and remonstrances, of the other partners ; there seems to be no reason, either in iaw or equity, for obliging the others, who are innocent, to contribute to this loss.
If, on the dissolution of a mercantile copartnership, it should appear that the amount of stock, which one partner had contributed, had been taken out of the common fund by any one claiming property in the goods, surely the partner whose interest was thus affected could not claim an equal proportion. of the residue of the stock, even if injustice had been done in awarding his property to another. Upon general principles of justice, therefore, we do not see that the members of this • company are to be affected by the subduction from the common funds of so much as would cover the *114 plaintiff’s interest, provided it can be ascertained that the portion withdrawn is applicable to the plaintiff’s interest in the fund. And this is manifest from the award of the commissioners, which deducts from the amount of the stock, 'which would be otherwise due to the company, so much as would be equal to the purchase-money which remained unpaid of William Wetmore’s purchase ; and it was under Wetmore that the plaintiff held her interest. If Wetmoré had never transferred his interest in the land, and was now claiming a distributive share of the stock thus awarded to the company, he could have no pretence to support his claim, it appearing that nothing had been received by the company on account of his interest; but he would be left to contend with those who had withdrawn his share from the common fund.
But the equity of the plaintiff’s claim is rested * principally on the circumstances, that she is a bona fide purchaser of a portion of Wetmore’s interest, and that she confided in the certificate which was issued to Williams, and which, by a vote of the company, was made transferable by endorsement, and was to be complete evidence of the holder’s interest in the purchase. It is supposed that, by this act, the company guarantied to purchasers the value of their certificates, in the proportion they bore to the value of the whole purchase, notwithstanding any defect or encumbrance which might exist in the original title of the party, on account of whose interest such certificate issued.
But it certainly may be doubted whether any thing more could have been intended, than to assure the holder of the certificate of the proportion of which it was evidence against the company or the trustees, who held the legal title, as far as any existed, in the land. Whenever a person, being a bona fide holder of the certificate, with the name of the party to whom it issued on the back, produced it, it was to be recorded in the books of the company; and when so recorded, the party producing it became a member, and had a right to vote. His title should not be disputed, but the certificate should be complete evidence. This, probably, is all the inference that can fairly be made from the doings of the company in this particular; and falls short of a warranty against latent defect of title in the original purchaser, or any future impediment to it, not imputable to the loches or mismanagement of the company or its agents.
But supposing this view of the case to be questionable, we think, on another ground, that the defendants are not answerable in this action. It is agreed that the plaintiff assented to all the votes and doings of the company, in relation to the compromise with the Cnited States, which was long desired, and finally effected ; that she *115 assented to the several acts of Congress, which authorized the appointment of commissioners, * and the settlement and adjustment of the claims, which were to be made pursuant to those acts.
The act of Congress does not regard the companies or associations which had been formed by the individuals who had been adventurers in this speculation; but provides for the extinguishment of claims, and the indemnification of persons claiming lands in the Mississippi Territory. Under this act, the commissioners determined that they might lawfully consider the separate claims of individuals, without regard to the forms of association which they for their interest had adopted; and they chose to consider the portion which was originally purchased by Wetmore as subject to certain equitable claims of the party with whom he made his bargain.
The plaintiff’s interest appears to have been faithfully represented, by the agents of the company, before these commissioners; and every consideration was presented to them which could tend to produce an award different from that complained of, but without effect. They thought it just and right to retain so much of the stock, which was applicable to the unpaid portion of the original consideration of Wetmore’s purchase, for the benefit of the company of whom he had purchased; so that nothing is in the hands of the defendants arising from Wetmore’s purchase. The plaintiff must be bound by this decision, while it remains unreversed; for the commissioners were judges chosen by her, as w7ell as by the company. They undertook to sever her interest from that of the company ; and if that was injuriously done, the defendants, or those whom they represent, ought not to be prejudiced; for the loss is imputable to an original encumbrance on the plaintiff’s title, which they could not, and were not obliged to, remove.
If the commissioners have misconstrued their powers under the acts of Congress, as has been suggested, this is a particular misfortune to the plaintiff, which cannot be equitably distributed over all the members * whose title or interest in the land was unencumbered. The proper relief, in such case, would be by petition, in the nature of an appeal, to Congress; for no judicial tribunal, at least none of this commonwealth, has any jurisdiction over the subject
It is said, also, that the principle adopted by the commissioners, by which they withheld the land, or its equivalent," from an assignee, for a valuable consideration, without notice, of a secret lien, in order to secure the vendor, who had obtained his security at the *116 time of the sale in the form stipulated, is incorrect, and cannot be supported by any precedents in courts of equity.
On this head we forbear to express an opinion, however doubtful we may be of the ground assumed by the commissioners, because we have not time to examine sufficiently to enable us to determine; a id we should not choose to deny the position of gentlemen who appear to have weighed the subject deliberately. But be this as it may, the question before us cannot be affected by it, for the commissioners had jurisdiction of the subject; and even if they have decided erroneously, their decision is to be respected, while it remains in force.
As to their authority, under the act, to entertain the claim of Jackson, and to appropriate a part of the stock to compensate him for the notes of Wetmore, we have no doubt. The words of the authority are very broad: they are to adjudge and determine upon all controversies arising upon claims which may be found to conflict with, and be adverse to, each other. Jackson’s claim conflicted with the plaintiff’s, as represented by the New England Mississippi Company, and was therefore within their jurisdiction. If they have decided wrongly, we think the only remedy is to apply to Congress for a rehearing before the commissioners, or such other mode of redress as they shall see fit to apply.
Amory and Ritchie for the plaintiff.
* Bigelow and Blake for the defendants.

Plaintiff had leave to discontinue